Good morning. I don't know that I really said this yesterday because we reconstituted the court yesterday, but Judge Martin and I are very pleased to have our colleague from the with our work. He's taken on an extra responsibility for no extra pay in coming down here and we're very, very grateful for that. You didn't say there's no pay. I said no extra pay. I think you're still getting paid what we get paid, but we're grateful to him for doing that. He's had really a distinguished career as a former state solicitor, a Supreme Court clerk, and Supreme Court advocate. So he's been a good friend to our court. This is not his first time to sit with us and we really appreciate him being here. Thank you. We have four cases to hear this morning. We're familiar with your cases, the authorities cited in your briefs, portions of the record at least, if not the entire record. So you only have limited time and you should feel free to get straight to the heart of your argument when it's your time to speak. Pay attention to our traffic lights. When the red light shines, it means what it does outside and you can just assume that there's a traffic camera at every red light. So if you want to take your chances, you know, go at it. But not only is there a traffic camera, there's also a police officer waiting with a pad of tickets. If you're answering a question from the court, though, the officer will exercise some discretion and let you finish your answer. So we'll start this morning with United States v. Bain. So you're Mr. Woody? No, Your Honor. I'm Thomas Birch from the University of Georgia, appointed by the court to represent Greg Bain. Today, one of our third-year students, Mr. Woody, will be presenting argument on our behalf and I'll be sitting at the counsel table. Thank you, Your Honors. Great. All right. So Mr. Woody. Good morning, Your Honors, and may it please the Court. My name is Spencer Woody and I represent Mr. Gregory Bain, one of the two appellants in this morning's case. Since the government in their brief have conceded that the Supreme Court decision in Honeycutt v. United States announced a substantive retroactive rule, the only disputed question before this Court today is whether the writ of error quorum nobis is an appropriate vehicle by which to apply Honeycutt retroactively to Mr. Gregory Bain. Well, that's not the only question. There are any number of grounds where we might affirm the denial of relief here, it seems to me, one of which is that there's been a procedural default. Your Honor, that is one way this Court could say that there was a problem, but if this Court does agree that this was a jurisdictional error, and that being the fundamental error, I don't see how it can be jurisdictional. Your Honor, this Court has said that a jurisdictional error exists when looking at the face of the indictment, the government alleges something that is not authorized by the statute. And in this case, the indictment for Mr. Gregory Bain promised to hold him jointly and separately liable. Yeah, but the district court didn't lack all authority to impose forfeiture, did it? I'm sorry, Your Honor, can you repeat that? The district court didn't lack all authority to order forfeiture, did it? No, Your Honor, it just did not have the authority to use joint civil liability. That doesn't sound jurisdictional to me. Your Honor, in the way this Court has understood jurisdictional error, it includes both a conviction and a sentence. For example, in United States v. Peter, this Court held that it was a jurisdictional error for an individual to be charged with conduct that wasn't actually a crime. That shows that jurisdictional error can take place on the conviction side. And in United States v. Tomine, this Court held that it was a valid jurisdictional error challenge. Yeah, but this is really just like a scope of the remedy issue, isn't it? No, Your Honor, I don't believe it is, because as I was saying, in Tomine, the Court said that it was a valid jurisdictional error challenge when they were saying that they weren't challenging the underlying conviction, but they were saying they should have been charged under a different There's no challenge to the conviction here either. No, Your Honor, we're not challenging the underlying conviction. Nor the authority of the district court to order forfeiture. It's just the scope of it, whether there can be joint and several liability. Your Honor, joint civil liability was the only tool that the Court could have imposed any sort of forfeiture on Mr. Gregory Bain, because as the district court found, Mr. Gregory Bain didn't benefit from any of the proceeds of the crime. So even if joint and several liability was not available tool, as Honeycutt has said, the Court did not have any authority under law or under the facts to impose any sort of forfeiture on Greg Bain because he didn't benefit. He's exactly like the brother in Honeycutt in that way. It seems to me this is simply, you know, a question of statutory interpretation. It's not a constitutional issue. If you're wrong that it's a jurisdictional about it being a jurisdictional error, procedural default applies, right? Your Honor, it would, there would be a way around procedural default in this case because of what the Supreme Court has articulated in Reed versus Ross, the exception to procedural default. And in this case, in 2011, when Mr. Greg Bain was sentenced, it would have been both novel and futile at the time for him to bring a claim challenging joint and several liability. This Court for 25 years and up until 2011 had held that joint and several liability was an available punishment. In 2009, United States versus Seeher, this Court held that joint and several liability logically extended to co-conspirators. So there was a wall of precedent from this Court saying don't bring challenges to joint and several liability. So it was novel and futile. Honeycutt faced the same wall of precedent, right? No, there was a circuit split of Mr. Honeycutt faced because at the time in 2011, this Court, the 8th Circuit, the 2nd Circuit, the 3rd and the 4th Circuit had all said that joint and several liabilities. If there's a circuit split, it's a pretty good idea to preserve the issue wherever you are. Yes, Your Honor, but there was not a circuit split in 2011. Every case, every court that had decided the issue of joint and several liability when Mr. Greg Bain was sentenced in 2011 had decided that joint and several liability was okay. It wasn't until 2015 that these courts are wrong. I mean, that's the whole point of this is to keep pressing on. Tell them, you know, that's what we have re-hearing on bond for. That's what we have Supreme Court petitions for. And lawyers aren't known for being shy for trying new things. See Coram Novus today. Your Honor, when this Court has held for 25 years that joint and several liability was available, that every circuit court had said that joint and several liability was available, Mr. Greg Bain did not have any sort of way of pleading a challenging joint and several liability, especially because there was no successful challenges anywhere in the country that he could have modeled his complaint after. This Court has looked at Reed v. Ross and Isaac v. Engle and has said that there are exceptions to procedural default. And this has to be one of those cases where there is an exception to procedural default. Do you wish your best authority for what we've said that, you know, where it's just an issue of statutory interpretation that that's good enough? Your Honor, if we look to the principle that the Supreme Court laid out in Reed v. Ross, there has to be an exception when it's novel and futile. And if novelty and futility doesn't exist when there are no successful claims anywhere in the country, I don't know if there's even a... I mean, this is just, to me, it's just like Honeycutt. You look at the text of the statute, the structure of it, and you've got a good argument. That doesn't satisfy the novelty requirement, does it? Your Honor, it was novel at the time in 2011. Although you're saying that it was just a statutory interpretation question, everyone that had maybe brought that argument had failed. Everyone that had said, you know, let's look at the statute and see if joint and several liability was involved had failed. In this circuit and every circuit that existed that had dealt with the issue in 2011. And the Supreme Court says futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time. Yes, Your Honor, that's true. But it wasn't just this particular court at this particular time. It was every court that had dealt with the issue. This is why this is a different case when it comes to procedural default than many of the cases the government cited in their brief. Boosley versus United States, there was a circuit split. Boosley could have latched on to a successful claimant in that case. In McCarthy, there was a circuit split between the Ninth and First Circuit. The court could have... So what are the implications of your argument that everybody can bring these claims? No, Your Honor, there is, the government is... What is the limitation? Yes, Your Honor, there is a limitation when it comes to applying quorum nobis, and that comes to the diligent portion that I mentioned earlier. And diligence of this court has not completely defined what that means, but it has to be something along the lines of what habeas requires of a one-year bringing the claim. We just add that to quorum nobis. When I start to hear this, I find myself saying, why does quorum nobis still exist? Why isn't it that 2255 occupied the field? Your Honor, because they exist in two different realms. Quorum nobis exists to challenge noncustodial portions of a sentence. Habeas corpus exists to challenge custodial portions of a sentence. And this distinction has been made by this court and by Judge Calabresi in Kaminsky v. United States, the Second Circuit opinion. Your Honor, I'm seeing... We have the distinction, but we're still going to borrow some things from the habeas statute when we need it. Your Honor, this court in United States v. Peter applied quorum nobis, and Peter had brought his claim within 13 months of the decision being handed down. So the line for diligence when it comes to quorum nobis is roughly around that same area. Mr. Greg Bain brought his claim within eight months of Honeycutt coming down. Thank you. They're just not... Go ahead. Mr. Woody, I'm not... This isn't going to eat into your rebuttal, but I just was trying to get a framework for the relief that you're looking for. You're not asking for the government to return or are you asking for the government to return the money that your client already forfeited in his house, $148,000 or something like that? We are asking the government to return that money since they didn't have the authority to take it in the first place. Okay. And what is the... I was having a hard time telling. What is the remaining outstanding due in the forfeiture award? The government has said in their briefs that they don't plan to pursue any more of the forfeiture money that's available out there. I don't have the exact number, but the government said they're not going to pursue any more forfeiture. So it's pretty much a closed world that we're dealing with when it comes to the money. Okay. Just what he's already paid? Yes, Your Honor. Okay. All right. Thank you. Thank you. Okay. Thank you, Mr. Woody. You saved three minutes for rebuttal. Is it Haas? That's correct, Your Honor. Yes. Mr. Haas. May it please the Court. My name is Lennon Haas and I represent Mr. Ben Bain, Greg Bain's father. Mr. Bain joins in the jurisdictional error and procedural default arguments made by Mr. Woody, but I also want to talk about Mr. Bain's forfeiture stipulation. That stipulation bars neither review nor relief because Mr. Bain only stipulated to the amount of money tainted by the conspiracy for which he and others were convicted. He did not stipulate that he actually acquired that same amount of money. Because that latter finding was never otherwise made, we ask that this Court vacate his forfeiture judgment and remand for determination of how much tainted property Mr. Bain actually acquired. Honeycutt says that for property to be forfeitable, it has to be two things. It has to be one, tainted by the conspiracy, and two, actually acquired by a conspiracy. Your client was the mastermind of the fraud? Why wouldn't he have been responsible for the proceeds of the entire fraud? So the proceeds here flowed through a corporation and the corporation was not purely the product of the conspiracy. It had legitimate businesses or legitimate business. It had legitimate employees. Some of the proceeds that came into the corporation could have, for example, flowed out to an employee in the form of wages. It could have flowed out in the form of a payment to a vendor. Not all of the money that went into the corporation necessarily went into Mr. Bain's pockets. Who owned the corporation? Excuse me? Who owned the corporation? Mr. Bain did, Your Honor. And there is no evidence, is there, that he was highly paying his employees? For example, his son's salary was $30,000 a year. Correct. So you're saying maybe the money went other places. I mean, was there somebody receiving a high salary? Well, that kind of gets at the core issue here. We don't know. There was no factual finding on that point. And whether it was $5 or $2.5 million of the $5.846 million that didn't go to Mr. Bain. But in any event, he agreed to the amount. He stipulated to the amount. He stipulated that $5.846 million was tainted by the conspiracy. He did not agree that that money was actually acquired by him. So again, we know from Honeycutt, you've got to have those two things, conspiratorial taint and actually acquired. We know Honeycutt applies to the healthcare fraud forfeiture statute, but we don't know what part of the statute satisfies which prong of Honeycutt. To answer that question, you have to look through the language of the statute and the language of the stipulation. The statute requires that a court order a person convicted of healthcare fraud offense to forfeit property that constitutes or is derived directly or indirectly from gross proceeds traceable to the commission of the offense. Mr. Bain's stipulation only includes that latter part of the statute. Again, the natural meaning of traceable to suggests conspiratorial taint, not personal possession, and Honeycutt helps us again here. It refers to tainted property as property flowing from the crime itself. And flowing from and tainted to speak to a connection between property and a conspiracy, not a connection between property and a conspirator. Just to make sure I'm following you, you're making the point we need a hearing to figure out exactly how this all worked out? We need a hearing to determine how much money Mr. Bain actually acquired from this conspiracy. Yes, Your Honor. Well, if we somehow get her on the waiver and we're in forfeiture land, it means we're in plain air land. And why don't you have to show that there's been an egregious violation of Honeycutt? I mean, as opposed to saying, let's go have a hearing and see exactly what happened. Well, we can't at this level make that showing. And we're not able to bring additional facts to bear. That to me also creates another problem. If this is subject to procedural default, then you would have to show cause and prejudice. And you're admitting you can't show prejudice. Well, no, Your Honor. I don't say I'm conceding that he can't show prejudice. I'm saying we don't know what prejudice he suffered because those findings were never made below. Sometimes these things are done through ineffective assistance claims, right? They can be. Yes, that's a viable path. But in this case, that allows you to be at the trial to get the evidence out there. Yes, Your Honor, that's a possible path. I don't think it's a possible path here, unfortunately. Thank you, Your Honor. Ms. Gershaw. Good morning, Your Honors, and may it please the Court. Holly Gershaw on behalf of the United States. I'd like to start where this Court was focusing most of its attention, which is procedural default. This was not a jurisdictional error, so procedural default applies. And not only does procedural default apply, but waiver applies. And Ben Bain waived his claim by stipulating both to the entry of the forfeiture money judgment and to the forfeiture of the assets at issue in this case, which do not have a honeycut error because they were forfeited pursuant to 821 U.S.C. 853 P, which requires the forfeiture of substitute assets and doesn't require a finding of a taint. But even if he hadn't affirmatively waived the argument, both he and Greg had procedurally defaulted by failing to show causes and prejudice. As Your Honor has indicated, Ben Bain has conceded that he cannot show prejudice. And in fact, if this case were to go back for reconsideration, the United States would seek to hold him responsible for the entire $7 million that was paid to by Medicare and Medicaid on fraudulent claims. The only reason that the forfeiture money judgment was limited to $5.8 million was because of the stipulation that was entered into between Ben and the United States. Why aren't you confessing error? You could earn a little more money for the government. We are respectful of the court's judicial resources and respecting the rules of finality. So you're not going after more money? I mean, that part's over if you win here? Correct. Against either of them? Against either of them. In that regard, I mean, are you making an admission at Judico that you're not, the law doesn't permit you to collect any more forfeiture funds from Greg Bain? In order for us to do so, Your Honor, we would have to satisfy the requirements of 853P, which require that the assets be no longer available because of the acts or omissions of a particular defendant. So if we were to forfeit any additional . . . So that's a no? Well, it is a no, most likely. But if the United States were able to prove that Greg Bain had obtained those assets, then we would be able to forfeit them, forfeit assets to satisfy the forfeiture money judgment. But there wouldn't be a honeycut issue there because we would have satisfied that he had personally obtained those proceeds. But no, for all practical matters in this case, we will not be seeking to . . . But that's just not binding. I mean, somebody could come next year and have a different view of it, right? I mean, it's not binding on future members of your office. It's not binding, but I mean, 853P, 28 U.S.A. 853P is binding on our office. So . . . But you just said you can't proceed under that. Correct, which is why we wouldn't be able to forfeit any additional property to satisfy the forfeiture money judgment. But also, with respect to prejudice to Greg, again, he had a restitution obligation of over a million dollars, and the United States, and he paid virtually no money towards that restitution obligation. Had he objected to . . . But that's not the way the government chose to proceed. I mean, you chose to proceed by it would have been okay if we did it the other way. I don't . . . Well, we chose to proceed that way because there was no objection. We had two pools of assets for which to satisfy two different obligations, restitution and forfeiture. And the fact that we chose to allocate in the way that we did was because there was no objection to the forfeiture. And I'd also like to point out that where defendants lack the assets to satisfy both restitution and forfeiture, it's the government's policy to satisfy restitution from the forfeiture through the policy of restoration or remission. So the funds are really treated interchangeably to the extent that they are first being used to satisfy restitution. But even if the court, even if the bans had somehow shown prejudice, they haven't shown cause to excuse their procedural default. Because as this Court knows, there's nothing novel about the rule that became the rule in Honeycutt. When the Supreme Court decided Honeycutt, it did so based on the plain meaning of the statute and a dictionary. Those tools were available to legal counsel at the time that the bans were sentenced. And as the Court has recognized in Bowsley, and this Court has recognized in McCoy, even if every circuit had rejected the rule that became the rule in Honeycutt, that would still not constitute cause for their failing to procedurally default. Now . . . recognize that we just go along with that. But nationally, do you . . . I just don't understand why someone's not saying 2255 occupied the field. That is just really strange. Let me say that now. A federal district court lacks inherent authority to modify a sentence outside the framework provided by a statute and the federal rules of criminal procedure. Congress has only authorized a direct appeal of a forfeiture order and has specifically limited collateral review of a sentence to issues pertaining to custody. So quorum nobis cannot be used to challenge a final order of forfeiture or any other monetary penalty included in a sentence. To the extent quorum nobis survives at all, it is only available . . . the only difference between it and habeas is whether the defendant is in custody, as the Supreme Court has recognized and other circuits have held. And in other words, if quorum nobis relief is available at all, it is only available to the extent that the same relief would have been available to a defendant who is incarcerated under habeas. And in fact, the only out-of-circuit case that the Bain site for the proposition that quorum nobis is available to challenge a monetary penalty based its decision on the fact that it believed that section 2255 would have been available to an incarcerated defendant. So no, Your Honor, quorum nobis is not even available. I guess it's your position. There's no way for any defendant in custody or not, well, let's assume not in custody, to get relief under Honeycutt retroactively. That's correct. As this Court held in Guerra, direct appeal is the only avenue to challenge a final order of forfeiture. To hold otherwise would blow a hole through Congress's statutory scheme, which specifically limits the availability of collateral review of sentences to custodial issues. It's a statutory scheme that didn't allow joint and several liability. But that, the statutory scheme, that's talking about a right. But as this Court has recognized in MacArthur, just because you have a right doesn't mean that you have a remedy. And the Court cannot, Carlisle and MacArthur are clear that where Congress has spoken and created a scheme, quorum nobis can't be used to expand that to create a right of collateral review where no right has existed in the first place. And now I would be happy, the defendants didn't really address whether this is a fundamental error in their case. I'm happy to address that if the Court is interested, but otherwise I would ask the Court. You had me at MacArthur. I'll ask the Court for the reasons stated in our brief to an argument to affirm the district court. Thank you very much. Mr. Woody. Your Honor, there's a few things to note about what the government has just said. They've argued that they could have used forfeiture without joint and several liability against Mr. Gregg Bain. That's not true because Mr. Gregg Bain did not benefit from any of the proceeds of the fraud. The only reason they were able to go after him at all was because of joint and several liability. The district court found- They said they could have obtained it through restitution. Your Honor, what they could have done, we don't know because the restitution has been satisfied. The burden is on you to show prejudice. I think that's the point. Yes, without having the statutory authority to do so at all. If they would have had that authority to get it through restitution, what difference does it make? Your Honor, we don't know whether they could have done it through restitution. If that's the problem for you, then you can't establish prejudice. Your Honor, it was prejudice by taking his car and his home without having the authority to do so. As the Seventh Circuit has shown in United States v. Michler, it was similarly prejudiced to have a faulty audit that granted a faulty restitution. That was prejudice in that case. Additionally, Your Honor- What about her argument about quorum nobis and forfeiture? Her point is, if you want to challenge that, what Congress has given you is the right of direct appeal and allowing quorum nobis relief blows a hole into that scheme. Your Honor, I disagree with that. I think the conflation between saying habeas and quorum nobis and saying that you could do everything through habeas- Or the criminal rules. I'm sorry, Your Honor. Or the criminal rules. Or the criminal rules. You still have habeas, excuse me, quorum nobis functions in its own way and allows petitioners to challenge noncustodial portions of a sentence. Habeas doesn't interfere with that. What case says that you can use quorum nobis for forfeiture? Your Honor, specifically for forfeiture, I can't think of one. But substantive retroactive rules have been used to claim forfeiture problems. That was in Huey versus the United States. But the idea is you have a statute that's enacted. You have rules that are enacted. They're enacted against a backdrop where there are these common law writs. And the whole point of codifying is to codify some things and not others. Now, I get the idea that when there's ambiguity about what you codified, sometimes you preserve these common law writs. But I just don't see it here. It's such a highly reticulated scheme. You have to use habeas to give yourself a statute of limitations. So this works. It just seems very funny. Your Honor, I want to be clear about that. We're not using habeas to say that habeas, therefore, gives quorum nobis. It's just that they track each other very closely. And this court has done that in the past when applying quorum nobis cases. They've looked to habeas and said, yeah, one year is a good line to determine what diligence is for quorum nobis purposes. Thank you. Nice job, Mr. Woody. We appreciate your appearance and the acceptance of the appointment by the Georgia Appellate Clinic. It's not the first occasion that the clinic has represented someone before our court. And it's always acquitted itself very well. We appreciate accepting the appointment. And Mr. Haas, I understand you also accepted this appointment. We appreciate you doing so and helping us with our work this morning. I think we understand the case. Thank you.